IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

```
BILLY G. PERRY,              )
                            )
     Plaintiff,             )
                            )
v.                          )          No. 22-1055-TMP
                            )
COMMISSIONER OF SOCIAL      )
SECURITY ADMINISTRATION,    )
                            )
     Defendant.             )
```

ORDER AFFIRMING THE COMMISSIONER'S DECISION

On March 21, 2022, Billy G. Perry filed a Complaint seeking judicial review of a social security decision.[1] (ECF No. 1.) Perry seeks to appeal a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title II disability benefits. (ECF No. 16 at PageID 1365.) For the following reasons, the decision of the Commissioner is AFFIRMED.

I.   BACKGROUND

A.   Procedural History

On August 27, 2012, Perry filed an application for Social Security Disability benefits under Title II of the Social Security

---

[1]After the parties consented to the jurisdiction of a United States magistrate judge on May 25, 2022, this case was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 12.)

Act ("Act"), 42 U.S.C. §§ 404-434. (ECF No. 16 at PageID 1365.) The application, which alleged an onset date of January 1, 2004, was denied initially and on reconsideration. (Id.) Perry then requested a hearing, which was held before an Administrative Law Judge ("ALJ") on April 4, 2014. (Id.) In a decision issued on May 22, 2014, the ALJ found that Perry was not disabled under sections 216(i) and 223(d) of the Act. (R. 19.) On September 25, 2015, the Social Security Appeals Council denied Perry's request for further review. (R. 1-3.)

On October 15, 2015, Perry filed an appeal in the United States District Court for the Western District of Tennessee. On October 9, 2019, United States Magistrate Judge Charmiane G. Claxton remanded Perry's case "for the limited purpose of addressing the opinions of the consulting examiners, in accordance with 20 C.F.R. § 404.1527(e), and to adequately justify the resulting residual functional capacity (RFC) in light of all of the opinions and evidence of record." (R. 711.)

On March 1, 2020, the Appeals Counsel issued an order remanding the case to a new ALJ for further proceedings consistent with the district court's order. (R. 712-15.) A hearing was held on January 6, 2020, and Perry did not appear or provide testimony. (Tr. 672-80.) On July 29, 2020, the ALJ again found that Perry was not under a "disability" as defined in the Act. (Tr. 650-71.) On January 21, 2022, the Appeals Council declined to assume

jurisdiction over the case. (R. 368.) Perry has exhausted his administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner. Under section 205(g) of the Act — 42 U.S.C. § 405(g) — judicial review of the Commissioner's "final decision" is available if requested within sixty days of the mailing of the decision. Perry timely filed the instant action. (ECF No. 1.)

**B.    The ALJ's Decision and the Five-Step Analysis**

After considering the record and the testimony given at the hearing, the ALJ used the five-step analysis set forth in the Social Security Regulations to conclude that Perry was not disabled. See C.F.R. § 404.1520(a); (R. 665.) That five-step sequential analysis is as follows:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be

considered to determine if other work can be performed.

Petty v. Comm'r of Soc. Sec., No. 1:14-cv-01066-STA-dkv, 2017 WL 396791, at *2 (W.D. Tenn. Jan. 30, 2017) (citing Willbanks v. Sec'y of Health & Human Servs., 847 F.2d 301 (6th Cir. 1988)). "The claimant bears the burden of proof through the first four steps of the inquiry, at which point the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity.'" Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004) (quoting Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003)).

At the first step, the ALJ found that Perry did not engage in substantial gainful activity during the period from his alleged onset date of January 1, 2004, through his date last insured of December 31, 2008.[2] (R. 656.) At the second step, the ALJ concluded that Perry had the following severe impairments: "seizure disorder and hypertension." (Id.)

At the third step, the ALJ concluded that Perry's impairments do not meet or medically equal, either alone or in the aggregate, the severity of one of the impairments listed in 20 C.F.R. Part

---

[2]The ALJ acknowledged that there is evidence on the record that Perry worked after the alleged disability onset date. (R. 656.) However, the fact that he had no reported earnings since 2003 did not support a finding that he had engaged in substantial gainful activity since his alleged onset date. (Id.)

404, Subpart P, Appendix 1.[3] (R. 658.) The ALJ considered the pre-2016 listings 11.02 and 11.03 and the current listing of 11.02. (Id.)

The ALJ found that Perry's seizure disorder did not meet or medically equal the pre-2016 listing of 11.02 because the listing requires documentation of "convulsive epilepsy occurring more frequently than once a month in spite of at least three months of prescribed treatment." (Id.) The ALJ found that Perry's medical records did not show that he was having seizures that frequently. (Id.) The ALJ also found that Perry's seizure disorder did not meet or medically equal the pre-2016 listing of 11.03 because that listing required "petit mal seizure more than once a week, despite medical compliance." (Id.) Again, the ALJ found that Perry's medical records did not show he was having seizures frequently enough to meet the listing. (Id.)

The ALJ found that Perry did not meet the current listing of 11.02 for the following reasons:

> The current listing 11.02 can be met four ways: (1) generalized tonic-clonic seizures occurring at least once a month for at least three consecutive months despite adherence to prescribed treatment; (2) dyscognitive seizures occurring at least once a week for

---

[3]The criteria in the Listing of Impairments that the Commissioner uses to evaluate disability claims involving neurological disorders was revised comprehensively on July 1, 2016, with the new regulations effective September 29, 2016. Rodway v. Comm'r Soc. Sec., 1:18CV0169, 2019 WL 540871 (N.D. Ohio Jan. 24, 2019). Perry's original hearing was held on April 4, 2014. Thus, the pre-2016 listings are applicable in this case.

at least three consecutive months despite adherence to prescribed treatment; (3) generalized tonic-clonic seizures occurring at least once every two months for at least four consecutive months despite adherence to prescribed treatment and a marked limitation in one of five identified area of functioning; or (4) dyscognitive seizures occurring at least once every two weeks for at least three consecutive months despite adherence to prescribed treatment and a marked limitation on one of five identified areas of functioning. There is no current listing 11.03. The medical records during the prescribed period does not substantiate the required number of seizures despite adherence to prescribed treatment to meet either version of listing 11.02 or the pre-2016 listing 11.03.

(Id.) Further, the ALJ noted that there is no listing criteria for hypertension, but noted that this impairment has been considered generally under listing 4.00H1. The ALJ stated that based on the that Listing's requirements, Perry's "impairment does not rise to listing level severity." (Id.)

When a claimant's impairments do not meet or equal a Listed Impairment, an assessment of their residual functional capacity ("RFC") is conducted, based on all the relevant medical and other evidence in the case record. 20 C.F.R. § 404.1520(e). The RFC is used at step four and, if necessary, step five in the process. First, at step four, it is used to determine whether the claimant can perform their past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). If a claimant has the RFC to perform their past relevant work, they are not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ found that Perry had the RFC to perform "a full range of work at all exertional levels but with no

exposure to workplace hazards, such as unprotected heights and dangerous machinery. (R. 658-59.) Based on Perry's RFC, the ALJ found that Perry was unable to perform any past relevant work. (R. 662.)

In reaching the RFC determination, the ALJ discussed Perry and his wife Juliet Perry's testimony and the medical evidence in the record. The ALJ summarized their testimony as follows:

> The claimant and his wife both testified at the original hearing. They alleged the claimant suffers from medical conditions that caused him to experience seizures, dizziness, loss of consciousness, fatigue, and difficulty bending, standing, walking, remembering, and concentrating. Specifically, they alleged that the claimant experienced "blackout" seizures on at least a weekly basis and grand mal seizures at least every other month prior to the date last insured. Ms. Perry testified that claimant would have up to five seizures in a day. In addition, the claimant's wife alleged the claimant has difficulty following written instructions, and cannot pay attention for extended periods. However, they admitted that the claimant was generally capable of managing his own personal care and hygiene, preparing meals, performing typical household chores, reading, watching sports, attending church regularly, and spending time with others.

(R. 659) (internal citations omitted). In evaluating the credibility of Ms. Perry's opinion, the ALJ stated:

> Claimant's wife, Juliet Perry, testified at the hearing in April 2014 and assisted Mr. Perry in completing a function report on September 10, 2012. The function report at Exhibit 4E reported claimant's functioning at the time the report was completed in September 2012. As such, it offers little assistance as to claimant's limitations as of December 31, 2008, the date last insured. Ms. Perry's testimony was given over five years after the date last insured. It is difficult for any witness to offer specific testimony concerning

limitations five years in the past and to differentiate
those limitations from the present. Ms. Perry's
testimony in 2014 is not consistent with the treating
records or objective findings prior to the date last
insured. Therefore, her opinion is assessed no weight.

(R. 662.) (internal citations omitted). The ALJ concluded that

"the claimant's medically determinable impairments could

reasonably be expected to cause the alleged symptoms; however, the

claimant's statements concerning the intensity, persistence and

limiting effects of these symptoms are not entirely consistent

with the medical evidence and other evidence in the record. . ."

(Id.)

The ALJ then considered Perry's medical records and treatment

history, noting that the record shows that Perry continued to work

after the alleged onset date and after the date last insured. (Id.)

The ALJ stated:

Medical records substantiate a seizure-like episode that
occurred on a work site in December 2009 witnessed by
the claimant's foreman, as indicated by ambulance
personnel records. The claimant also sought treatment
for bronchitis in November 2010, apparently triggered by
house remodeling dust. Similarly, the record indicates
that he continued to work into 2011, as indicated by
neurology treatment notes. Neurologist Michael
Brueggeman, M.D., warned the claimant against the
inherent risks involved in roofing work in January 2011.
After the claimant reported a mild seizure the following
month, his wife attributed this episode to his "working
very hard that day."

(R. 659-60.) Further, the ALJ found that the bulk of the medical

evidence in the records concerned examinations, illnesses, and

impairments that were diagnosed and treated after the date Perry

-8-

was last insured, December 31, 2008. (R. 660.) The ALJ stated, "[w]hile the undersigned has considered these treatment notes for context of the claimant's severe impairments, the claimant must establish, through the medical record, that he was disabled on or before December 31, 2008 in order to be entitled to a period of disability and disability insurance benefit." (R. 660.) The ALJ summarized Perry's medical records prior to December 31, 2008:

> The records prior to the date last insured are sparse. The medical evidence supports that the claimant has a history of high blood pressure, which was generally controlled with medications. However, the claimant had notable periods of noncompliance, which appeared to contribute to episodic seizures. As noted above, claimant was hospitalized from September 12, 2005 until September 15, 2005 due to a seizure secondary to hypertensive encephalopathy. It was noted that he was not compliant with his hypertension medication and drinking a six pack of beer per day at the time of hospitalization. Claimant's medications were adjusted. However, he was not started on antiepileptic medications following an extensive neurological workup, because the claimant's seizure was considered secondary to hypertensive encephalopathy. A head CT revealed no evidence of acute intracranial process, and chest x-rays were similarly negative.
>
> There are no further report of seizures or seizure-like activity until June 10, 2007. On that date, claimant was treated for a reported seizure. It was noted that claimant was not on medications to control seizures and that he had not taken his blood pressure medications "since yesterday morning." His blood pressure was elevated. His wife reported to EMS that he had a seizure two months prior. He was treated and released the same day. It was noted as a "single isolated seizure." On September 5, 2007, an ambulance was dispatched to respond to a "near syncope" event at ABC Supply Company, which is listed in the EMS records as an "industrial place or premises." Bystanders reported that claimant was looking into space and not responding. It was noted

that claimant advised EMS that he has Jacksonian seizures and takes medication for them, but forgot to take his medication that morning. Claimant's wife was contacted by phone. Claimant and his wife both requested that claimant not be transported to the hospital. He was not transported to the hospital.

Claimant started treatment with Family Healthcare of Jackson on April 10, 2006. At that time, claimant was reportedly taking blood pressure medications and aspirin. He did not report a personal history of epilepsy or seizure disorder at intake. (Exhibit 9F, p. 28) He was seen at this clinic nine times prior to the date last insured of December 31, 2008. These records are largely illegible. However, they do not detail uncontrolled or frequent seizures. The records primarily relate to refills of medications for hypertension with some notation of non-compliance. The only clear reference to seizures prior to the date last insured in these records was on September 5, 2008 where Dr. Stewart noted "possible seizure." On the June 21, 2007 note, there may be a reference to a seizure and the emergency room visit on June 10, 2007, but is unclear. It does not appear that any other record references seizures. At some point, claimant was prescribed Keppra as it is referenced in Dr. Stewart's note of September 5, 2008. It is unclear when this medication was first prescribed. According to the medical records, claimant reported that he was not prescribed any seizure medications when he was treated for a reported seizure on June 10, 2007, but reported to EMS that he was prescribed seizure medication (but failed to take it) on September 5, 2007.

Aside from episodic emergency room treatment for periodic seizures in the context of not complying with prescribed medication, the record contains minimal evidence of ongoing treatment that would suggest more significant impairment during the period at issue. Therefore, the undersigned concludes that, while the claimant should have certainly avoided hazardous situations including working at unprotected heights or around dangerous machinery due to his seizure disorder, the record contains minimal evidence suggesting any further limitations that existed between January 1, 2004 and December 31, 2008.

(R. 660-61) (internal citations omitted.) The ALJ also considered the opinions of two State medical consultants, who reviewed Perry's medical records as part of his benefits application. (R. 661.) In assessing their opinions, the ALJ stated the following:

> [T]he undersigned accords great weight to the determination of the State agency medical consultants, who determined the claimant had no exertional limitations, but should have avoided all exposure to hazards during the period at issue. This determination is accorded great weight because it is well supported by the objective medical evidence which shows that the claimant suffered periodic events during the relevant period, typically in association with medication noncompliance. However, there is minimal evidence of other impairments or ongoing treatment during the period at issue that would suggest further impairment. Where noted, physical examinations demonstrated generally normal findings, without evidence of neurological impairment. Therefore, the determinations of the medical consultants are accorded great weight.

(Id.) (internal citations omitted.)

The ALJ also considered the evaluation of Perry's treating physician, Dr. Earl Stewart, stating:

> No weight is accorded to the statement of Earl Stewart, M.D., who submitted a form indicating that the claimant met the seizure listing and is not able to work due to grand mal seizures prior to December 31, 2008. This opinion is not persuasive for multiple reasons. First, Dr. Stewart fails to provide any assessment of the claimant's functional limitations attributable to his seizure disorder. It is a wholly conclusory finding that claimant is not able to work and meets the listing for seizures. The determination of whether the claimant is able to work or meets/equals a listing are issues reserved to the Commissioner.
>
> Additionally, Dr. Stewart's opinion was rendered on March 31, 2014, over five years after the claimant's date last insured. Dr. Stewart's own treatment notes,

where legible, indicate that the claimant had generally normal physical functioning prior to the date last insured. This opinion further states that the claimant's medications were at therapeutic levels, yet seizures continued. However, this statement is not supported by the record during the period at issue. As detailed above, medical records indicate the claimant's few documented seizures or seizure-like events occurred in the presence of medication noncompliance. No contemporaneous medical records substantiate the presence, reports or allegations of seizures occurring more frequently than once a month in spite of prescribed treatment. As noted above, prior to the date last insured, there are a total of five possible events documented from the alleged onset of January 1, 2004 through December 31, 2008. There was a seizure in 2005 due to noncompliance with hypertension medication, two potential seizure events in 2007 where an ambulance was dispatched with reports of noncompliance with medication. One additional potential seizure event reported by claimant's wife to EMS in June 2007 and one reference to a "possible seizure" in Dr. Stewart's notes in September 2008. Such objective records do not support uncontrolled seizures occurring more frequently than once a month in spite of at least three months of prescribed treatment, nor does it support seizures continued during the relevant period despite medication being a therapeutic levels. As such, the opinion of Dr. Stewart is accorded no weight.

(R. 661-62) (internal citations omitted.) In light of this evidence, the ALJ concluded that Perry has the RFC to perform a full range of work at all exertional levels with no exposure to workplace hazards. (R. 662.) A vocational expert testified that "a hypothetical individual with the same age, education, work history and residual functional capacity as the claimant" would be unable to perform Perry's past relevant work as a Roofer. (R. 663.) The ALJ agreed with this assessment. (Id.)

-12-

Finally, at step five, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (R. 663.) The ALJ explained that Perry's "ability to perform work at all exertional levels was compromised by nonexertional limitations." (R. 664.) The vocational expert testified that, considering these limitations along with Perry's age, education, RFC, and work experience, Perry would be able to perform the requirements of representative occupations, such as "industrial cleaner," "grounds keeper," and "Nursery Worker (plants)." (Id.) Based on this testimony, the ALJ concluded Perry "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Id.)

On appeal, Perry argues that 1) the ALJ should have found that Perry met Listing 11.02; 2) the ALJ wrongfully dismissed the findings of Perry's treating physician; 3) the ALJ erred by failing to contact the treating physician when he found records to be illegible; 4) the ALJ improperly granted weight to DDS source forms and statements from non-examining reviewing experts; and 5) the ALJ's decision is not supported by substantial evidence.

## II.  ANALYSIS

### A.   Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which they were a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the

Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

**B.   Whether Substantial Evidence Supported the ALJ's Step Three Finding**

Perry argues that the ALJ should have found that Perry met the pre-2016 listing 11.02. The claimant bears the burden of showing their impairments meet or equal a listed impairment. See 20 C.F.R. § 416.920(a)(4)(iii); Rhodes v. Comm'r Soc. Sec., No. 15-cv-1230-TMP, 2018 WL 1811290, at *5 (W.D. Tenn. Apr. 17, 2018) (citing Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001)). "A claimant can demonstrate that [they are] disabled because [their] impairments are equivalent to a listed impairment by presenting 'medical findings equal in severity to all the criteria for the

one most similar listed impairment.'" Rhodes, 2018 WL 1811290, at
*5 (quoting Foster, 279 F.3d at 354). To satisfy Listing 11.02 for
the disability of epilepsy, an individual must suffer more than
one seizure a month with at least three months of treatment and
the record must contain a description of a typical seizure. See 20
C.F.R. Pt. 404 Subpt. P, App. 1, § 11.02. The ALJ recognized that
the medical evidence submitted by Perry was insufficient to compel
a finding of disabled under this listing. Specifically, the ALJ
noted that Perry's medical records did not show that he experienced
more than one seizure a month. (R. 658.) Indeed, between the
alleged onset date of January 1, 2004, through the date last
insured of December 31, 2008, the ALJ identified only five seizure
events in Perry's medical records. (R. 660-62.)

Perry argues that his treating physician, Dr. Stewart, stated
in his opinion that Perry "suffers seizures at the listing level
and frequency, with more than 3 months of treatment and medications
at therapeutic levels, from before the last date insured." (ECF
No. 16 at PageID 1378.) However, the ALJ found that Dr. Stewart's
opinion was conclusory and not supported by contemporaneous
medical records. (R. 661-62.)

Perry wife testified at the original hearing that Perry
"experienced 'blackout' seizures on at least a weekly basis and
grand mal seizures at least every other month prior to the date
last insured." (R. 659.) She also stated that Perry would have up

-16-

to five seizures per day. (R. 659.) However, the ALJ provided
sufficient reasons for discounting Ms. Perry's credibility. The
ALJ found that Ms. Perry's testimony was not consistent with the
medical records prior to the date last insured. (R. 662.)
Additionally, her testimony was given five years after the date
last insured, and the ALJ stated "it is difficult for any witness
to offer specific testimony concerning limitations five years in
the past and to differentiate those limitations from the present."
(R. 662.) Thus, the ALJ's determination that Perry did not meet or
medically equal Listing 11.02 was supported by substantial
evidence.

**C.    Whether the ALJ's Assessment of the Opinion Evidence Was
       Supported by Substantial Evidence**

       1. Dismissal of Treating Physician Opinion

       Perry argues that the ALJ erroneously dismissed the opinion
of his treating physician, Dr. Stewart. (ECF No. 16 at PageID
1378.) As a preliminary matter, because Perry filed his application
for benefits before March 27, 2017, the ALJ was required to adhere
to 20 C.F.R. § 404.1527 in considering medical opinions and prior
administrative medical findings in the record. See Jones v.
Berryhill, 392 F. Supp. 3d 831, 839 (E.D. Tenn. 2019). For claims
filed after March 27, 2017, 20 C.F.R. § 404.1520c governs the
evaluation of medical opinion evidence. The distinction is
meaningful because the revisions to the regulatory language

-17-

"eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion." Lester v. Saul, No. 5:20CV1364, 2020 WL 8093313, at *10 (N.D. Ohio, Dec. 11, 2020), report and recommendation adopted by, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021) (quoting Ryan L.F. v. Comm'r of Soc. Sec., No. 6:18-cv-01958-BR, 2019 WL 6468560, at *4 (D. Ore. Dec. 2, 2019)). In other words, claims filed before March 27, 2017, which fall under 20 C.F.R. § 404.1527, are subject to the "treating physician rule." Jones, 392 F. Supp. 3d at 839.

A treating source's opinion is due controlling weight if it is "well-supported by medically acceptable clinic and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.927(c)(2); Turk v. Comm'r of Soc. Sec., 647 F. App'x 638, 640 (6th Cir. 2016). If the ALJ discounts the weight normally given to a treating source opinion, he or she must explain his or her decision. 20 C.F.R. § 416.927(c)(2). "Where an ALJ does not give controlling weight to a treating source opinion, [he or she] weighs that opinion in light of the regulations, using the factors in 20 C.F.R. § 404.1527(c)(2)-(6)."[4] Perry v. Comm'r of Soc. Sec., 734 F. App'x 335, 339 (6th Cir. 2018). These factors are: "the length, nature, and extent of the treatment relationship; the

---

[4]The same factors can now be found at 20 C.F.R. § 416.927(c).

supportability of the physician's opinion and the opinion's consistency with the rest of the record; and the physician's specialization." Steagall v. Comm'r of Soc. Sec., 596 F. App'x 377, 380 (6th Cir. 2015) (citing Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004)). "The ALJ need not perform an exhaustive, step-by-step analysis of each factor; [they] need only provide 'good reasons' for both [their] decision not to afford the physician's opinion controlling weight and for [their] ultimate weighing of the opinion." Id. (quoting Biestek v. Comm'r of Soc. Sec., 880 F.3d 778, 785 (6th Cir. 2017)). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Dugan v. Comm'r of Soc. Sec., 742 F. App'x 897, 902-03 (6th Cir. 2018) (quoting Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013)); see also SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). The Sixth Circuit has explained that, in addition to facilitating meaningful review, this rule "'exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that her physician has deemed her disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" Winn v. Comm'r of Soc. Sec.,

615 F. App'x 315, 321 (6th Cir. 2015) (internal alterations omitted) (quoting Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004)). "Because of the significance of the notice requirement . . . a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence[.]" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 243 (6th Cir. 2007). This is true "even where the conclusion of the ALJ may be justified based upon the record." Id.

It is undisputed that Dr. Stewart is a treating physician who has been Perry's doctor since 2006. As such, Dr. Stewart's opinion is controlling if it is supported by objective medical evidence, consistent with other substantial evidence in the record, and if "there is [not] substantial evidence to the contrary." Wilson, 378 F.3d at 544; Loy v. Sec'y of Health & Human Servs., 901 F.2d 1306, 1308–09 (6th Cir. 1990); C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ provides several reasons for giving no weight to Dr. Stewart's opinion. First, Dr. Stewart gave a conclusory finding that Perry was not able to work and met the listing seizure disorders. However, Dr. Stewart did not provide any assessment of Perry's functional limitations that stem from his seizure disorder. Bass, 499 F.3d at 511 (holding that an ALJ is not inherently bound by a treating physician's opinion because "a

-20-

conclusion of disability is reserved to the Secretary . . . no 'special significance' will be given to opinions of disability, even if they come from a treating physician.") Second, Dr. Stewart's own treatment notes showed that Perry had "generally normal physical functioning prior to the date last insured." The ALJ found that this was at odds with Dr. Stewart's opinion that Perry was disabled. Inconsistency between the opinion of a treating physician and that physician's treatment notes is a "good reason" to discount the opinion. <u>Lester v. Soc. Sec. Admin.</u>, 596 F. App'x 387, 389 (6th Cir. 2015) (holding that it was reasonable for the ALJ to discount a treating physician's opinion when it was inconsistent with his own treatment notes). Third, the ALJ found that Dr. Stewart's opinion was inconsistent with Perry's medical records, which do not show that Perry experienced seizures "more frequently than once a month, in spite of prescribed treatment." (R. 662.) <u>See</u> <u>Keeler v. Comm'r of Soc. Sec.</u>, 511 F. App'x 472, 473 (6th Cir. 2013) (holding that there was substantial evidence to justify giving decreased weight to a treating physician's opinion where the opinion was internally inconsistent, based on subjective complaints, and contradicted by the record).

Although the ALJ did not systematically address each factor listed in 20 C.F.R. 404.1527, the ALJ noted that Perry had been a patient of Dr. Stewart since 2006, that Dr. Stewart was a treating physician, and that Dr. Stewart's opinion was not consistent with

Perry's medical records, including Dr. Stewart's treatment notes. The only factor the ALJ did not directly address was Dr. Stewart's specialization as a physician, which this court has held is not, on its own, a reason to find reversible error. See Lucy v. Saul, No. 19-1083-TMP, 2020 WL 1318803, at *6 (W.D. Tenn. Mar. 20, 2020). An ALJ satisfies their duty where the opinion gives "the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion." Francis, 414 F. App'x at 805 (citing Friend, 375 F. App'x at 551). The ALJ has done so here and, thus, has not committed reversible error.

    2. Illegible Portions of the Record

    Perry claims that the ALJ erred in failing to recontact Dr. Stewart, as required by 20 C.F.R. § 404.1519p, when he found portions of his records partly illegible.[5] (ECF No. 16 at PageID 1381.)  Section 404.1519p does, in certain circumstances, require an ALJ to allow for supplementation of a report. See 20 C.F.R. § 404.1519p(b). That section, however, applies only to reports of consultative examinations, defined as "a physical or mental examination or test purchased for you at our request and expense." Overman v. Kijakazi, No. 1:21-cv-01008-atc, 2022 WL 16859976, at *6 n.2 (W.D. Tenn. Sept. 29, 2022) (citing 20 C.F.R. § 404.1519). Dr. Stewart was plaintiff's treating physician

---

[5]Perry has not identified any relevant evidence in Dr. Stewart's notes that the ALJ failed to consider.

and not a consultative examiner. Therefore, § 404.1519p(b)is
inapplicable, and the ALJ was not obligated to provide Dr. Stewart
with an opportunity to supplement his treatment notes.

       3. Non-Examining State Medical Consultants

       Perry asserts that the opinions of the non-examining state
medical consultants, Drs. Brown and Thrush, cannot be "substantial
evidence," seemingly as a matter of law. (ECF No. 16 at 1383.)
("Richardson clearly holds that to be substantial evidence,
opinions must at least be from examiners, and we urge within the
reporter's area of expertise.") The ALJ's decision here was based
on more than just the administrative reviewers' assessments, as
discussed above. But even were it not so, Perry's wider proposition
overreads Richardson far beyond its pages. Richardson itself
contemplated the use of "medical adviser[s]" to provide evidence,
even those who had not examined the patient but nonetheless
examined their records and gave an opinion as to their condition.
See Richardson, 402 U.S. at 408. Further, federal regulations
require ALJs to evaluate administrative medical evidence "because
our Federal or State agency medical or psychological consultants
are highly qualified and experts in Social Security disability
evaluation." 20 C.F.R. §§ 404.1513a(b)(1). As a matter of law,
these opinions must at least be considered. Where the ALJ finds
them substantiated and consistent, they are within their role in
finding them persuasive as well. The ALJ properly considered the

findings of Drs. Brown and Thrush in accordance with the regulations.

Perry functionally asks the court to reweigh the evidence and credit the opinion of Dr. Stewart more than the ALJ did. (ECF No. 16 at PageID 1384.) The court cannot. Blakely, 581 F.3d at 406 ("the substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts") (citing Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). The undersigned finds that the ALJ adhered to the regulations in considering medical opinion evidence, and that the record provides substantial evidence to support the ALJ's decision.

### III. CONCLUSION

For the reasons above, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

March 1, 2023
Date